PETTENGILL v. MONTEITH LAND COMPANY.

1. CORPORATIONS—JUDICIAL INTERFERENCE WITH INTERNAL AFFAIRS.
Finding of trial court that land company, which owned lots in
large tract of land which it sold to persons who automatically
became members of an association whose board of directors
was dominated by the land company, was more responsible
for the difficulties between the 2 corporations than the
association, which justified gradual and complete relinquish-
ment of any control of the association *held*, supported by
competent evidence.

2. SAME—EQUITY—INTERFERENCE WITH INTERNAL AFFAIRS—FRAUD
—BREACH OF TRUST.
A court of equity has power to interfere in the internal affairs
of a corporation, when there is fraud or breach of trust.

Appeal from Montmorency; Dehnke (Herman), J.,
presiding. Submitted June 3, 1952. (Docket No.
10, Calendar No. 45,091.) Decided October 6, 1952.

Petition by Monteith Land Company, a Michigan
corporation, for amendment of decree to relieve it
of burden of selling lots. Cross petition by Canada
Creek Ranch Association, a Michigan nonprofit cor-
poration, for amendment requiring removal of its
directors appointed by Monteith Land Company.
Decree amended in accordance with prayer of Can-
ada Creek Ranch Association petition. Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[2] 13 Am Jur, Corporations §§ 1014, 1147; 19 Am Jur, Equity
§ 182.

*Edward A. Jacob (Paul F. Mabley,* of counsel), for Monteith Land Company.

*Russell E. Knister (Stern, Milmet & Rossier,* of counsel), for appellees.

SHARPE, J. This is an appeal from a decree entered May 5, 1944, as amended February 9, 1950. The facts giving rise to the mentioned decree are as follows:

In 1934, A. C. Monteith conceived the idea of purchasing a large area of land in Montmorency county, suitable for hunting and fishing purposes, and subdividing a portion of the area into lots for subsequent purchasers.

Pursuant to this plan Monteith purchased approximately 10,000 acres of land, and of this land he subdivided a part of the acreage into 3,500 lots. He was instrumental in organizing a corporation known as the Monteith Land Company, having for its purpose the promotion of sales of the subdivided lots, and at the same time providing a membership for the club. He then organized a corporation known as Canada Creek Ranch Association, which was to be the club to which every purchaser of a lot would automatically become a member.

In 1934, the 2 corporations entered into a contract whereby the members were given a one-half interest in the mineral rights in the land, excepting those rights reserved by the State of Michigan, and ownership certificates for lots purchased.

In 1939, the contract was changed, whereby Monteith Land Company retained all mineral rights, and lot purchasers were given membership certificates.

Up to the fall of 1939, there had been no membership meeting, but shortly thereafter a meeting of the membership was called, bylaws adopted providing for the election of 9 directors, 5 of such directors

to be selected by Monteith Land Company, and the membership selecting the other 4 directors. It appears that through the formation of the 2 corporations Monteith intended to keep control over the project until such time as the subdivided lots were sold.

Only one set of books was kept for the 2 corporations, and it did not reflect the true financial picture of the individual corporation's operations.

In 1942, the stockholders of the Monteith Land Company sold their stock to Thomas Herzog, who has since continued to own and control the Monteith Land Company.

In 1943, the members of the Canada Creek Ranch Association filed a bill in chancery against the Monteith Land Company for an accounting and relief from unreasonable interference and domination by the Land Company.

The trial court, after hearing evidence, entered a decree on May 5, 1944, which provided that each corporation was to operate separate and apart from each other, except as to such rights and obligations as would be necessarily incident to the mutual interests of each in the successful operation of the recreation acreage; that the 1939 and 1940 contract between the 2 corporations are null and void because of breach of trust on the part of the directors of the 2 corporations; adjustment of the financial accounts between the 2 corporations; making a determination of the names and terms of office of each director of Canada Creek Ranch Association, and reducing the right of Monteith Land Company to select directors for Canada Creek Ranch Association from 5 directors to 3 directors.

For a time following the entry of the decree the situation seemed to improve, but personal animosities subsequently generated an uncooperative spirit between the members of the Canada Creek Ranch

Association and the Monteith Land Company in the person of Thomas Herzog. In June, 1948, the Monteith Land Company filed a petition to modify the 1944 decree, claiming that Canada Creek Ranch Association has followed a course of deliberately refusing to assist the Monteith Land Company in selling the lots, contrary to paragraph 19 of the decree:

"It is Further Determined, Ordered, Adjudged and Decreed, that Canada Creek is entitled to all income from the Ranch House and the entire property described in exhibits "A" and "B" (excepting the building sites therein reserved for sale) together with all dues collected or owing out of membership in the aforesaid Canada Creek and all income of every kind and nature whatsoever, excepting only the return from the sale of lots in the before described property. It is further determined that all lot purchasers, as a condition to the purchase of lots as aforesaid, shall, upon making purchase thereof, become liable for dues regularly payable by members of Canada Creek as a condition to the use of the aforesaid club property generally, the recreational privileges and the club house and facilities. Canada Creek shall be entitled, at all times, to impose reasonable rules and regulations upon its members governing its operation, the collection of dues and the use of the premises and club facilities, but shall not unreasonably interfere with the proper sale of lots by Monteith; and said Canada Creek, its officers, directors and agents are specifically directed to cooperate with said Monteith, but without expense, to make available to Monteith, the facilities of the club, club house and real estate herein involved for the purpose of allowing inspection by prospective purchasers and for the serving of such meals and the use of such rooms at the Ranch House, at the expense of Monteith, as do not unreasonably interfere with the use of said facilities by the members of Canada Creek.

"Canada Creek is required to pay all expense of said Ranch House facilities and the property described in exhibits 'A' and 'B', including real estate taxes thereon and including taxes on unsold lots, and specifically excepting the cost of constructing roads to the building sites; but all members of Canada Creek shall have the right to use said property, including the unsold lots, at all times for proper purposes. Monteith shall make reasonable efforts to dispose of the lots not as yet deeded by it to prospective members and in the event of the failure of Monteith to dispose of all remaining unsold lots within a reasonable time, taking into consideration economic conditions, the demand for similar properties and all conditions properly affecting such sales, this court reserves jurisdiction to require Monteith to pay taxes upon undeeded lots and to enter such further order by way of amendment to this decree as shall reasonably require Monteith to carry out its undertaking by this court found, to promptly sell and dispose of the remainder of the now undeeded lots."

It was also claimed that officers and agents of Canada Creek Ranch Association have slandered defendant Herzog with prospective customers, and have made resales of lots at a discount, thereby making it impossible for Monteith Land Company to make its planned sales.

The officers of Canada Creek Ranch Association filed an answer to the above petition, denying the claims made in the petition, and also filed a petition for amendment to the decree, in which it is alleged:

"(b) That your petitioner is informed and believes and upon information and belief charges the fact to be, that respondent, at various times and on days and dates best known to respondent, has substantially increased the proposed sale price of lots intended for sale by Monteith Land Company and ordered sold pursuant to the terms of the aforesaid decree.

"(c) That according to the information and belief of petitioner, economic conditions of the public generally and of prospective purchasers for the unsold lots have, since the entry of said decree, been conducive to the sale of like or similar lots and that like or similar lots have been sold in increasing numbers throughout the State of Michigan but more particularly in the general area of the lots here in question to or through the year 1947.

"(d) That according to the information and belief of your petitioner and upon information and belief petitioner charges the fact to be that respondent has refrained from making a reasonable effort to sell or dispose of the maximum number of lots at a fair price and has failed to. fairly attempt to sell the aforesaid lots to the public generally but has, on the contrary, attempted by various means, contrary to the terms of the aforesaid decree, to interfere in the management and operation of petitioner corporation and to cause petitioner to purchase from respondent or cause to be purchased from respondent the remaining lots unsold by respondent.

"(e) That the cost and expense of petitioner for the payment of taxes upon the lots owned by Monteith Land Company has at all times been substantial but has materially increased in the various years succeeding the entry of the decree herein.

"(f) That according to your petitioner's information and belief, respondent has failed to construct various roads to various unsold lots, contrary to the obligation of respondent to so construct said roads and said lots have remained less readily salable than they would have been had respondent complied with its duties under the decree of this court and the contract thereby affirmed.

"That according to the information and belief of your petitioner, respondent has, by the dissemination of untrue and misleading statements at a stockholders' meeting held on March 31, 1948, and at various other days and dates best known to respondent, attempted to cause dissension within the mem-

bership of petitioner and has improperly and contrary to the terms of the decree attempted to interfere with the management of petitioner's club and has, accordingly, to some extent, made it more difficult for respondent itself to sell lots to members or others. That such activity on the part of respondent corporation is contrary to the terms of the decree and the determination of this court, according to the information and belief of your petitioner."

The court heard the petitions and permitted the taking of testimony, and on February 9, 1950, filed an amended decree, the pertinent parts of which read as follows:

"1. IT IS HEREBY ORDERED AND DECREED that Monteith Land Company shall, effective upon the election of directors of Canada Creek Ranch Association to be held in the spring of 1950, pursuant to the existent bylaws of Canada Creek Ranch Association, be entitled to name not more than 2 directors of Canada Creek Ranch Association and the members of Canada Creek Ranch Association shall, effective at said election, be entitled to name the remainder of the directors. That effective with the election of directors to be held in the spring of 1951, pursuant to the existent bylaws of Canada Creek Ranch Association, Monteith Land Company shall be entitled to name not more than 1 director of Canada Creek Ranch Association and the members of Canada Creek Ranch Association shall, effective at said election, be entitled to name the remainder of the directors.

"2. IT IS FURTHER ORDERED AND DECREED that effective with the election of directors of Canada Creek Ranch Association in the spring of 1952, Monteith Land Company will not be entitled to elect any members to the board of directors of Canada Creek Ranch Association.

"3. IT IS FURTHER ORDERED AND DECREED, that the newly-elected member of the board of directors of Canada Creek Ranch Association in the instance of each of the 3 replacements indicated in the preceding

paragraphs hereof shall be elected for a term of 3 years.

"4. IT IS FURTHER ORDERED AND DECREED, that such directors as at any time act as the appointees of Monteith Land Company shall in all manner and in all respects devote their efforts and their responsibilities solely to the protection of Monteith Land Company in the sale by Monteith Land Company of its remaining unsold lots and shall not, in any manner, interfere with such activities of Canada Creek Ranch Association as do not materially affect Monteith Land Company in the sale of its unsold lots and Monteith Land Company shall, in no manner, either directly or indirectly, interfere with nor take part in the conduct of the affairs of Canada Creek Ranch Association except to the extent that any action or inaction of Canada Creek Ranch Association affects Monteith Land Company in the sale of Monteith Land Company unsold lots and Monteith Land Company, its officers, directors, agents and representatives are hereby restrained and enjoined from such interference.

"5. Pursuant to stipulation of the parties in open court, IT IS FURTHER ORDERED AND DECREED that Thomas F. Herzog is to be replaced upon the board of directors by his appointee from time to time and the aforesaid Thomas F. Herzog is enjoined from at any time acting as director of Canada Creek Ranch Association as an appointee of Monteith Land Company.

"6. IT IS FURTHER ORDERED AND DECREED that effective with taxes payable covering the calendar year 1949, said taxes shall be payable by Monteith Land Company upon all such lots as are by it owned and taxes during the year 1949 and Canada Creek Ranch Association is relieved from the responsibility for the payment of such taxes and is relieved from the payment of any taxes upon lots owned by Monteith Land Company in subsequent years. Provided, however, that in the event Canada Creek Ranch Association pays or caused said taxes to be paid for said

year or for any subsequent year prior to the disposition by Monteith Land Company of the last of its unsold lots, then and in that event Canada Creek Ranch Association shall be entitled to reimbursement therefor upon demand from Canada Creek Ranch Association to Monteith Land Company and in the event of failure to pay such demand may have judgment and execution therefor upon application for such purpose made to this court."

Defendant Land Company appeals and urges that the court was in error in dismissing its petition, as the evidence shows the Canada Creek Ranch Association interfered with the Land Company's sale of lots. From our examination of the record we conclude that neither party has been completely without fault, but the Monteith Land Company, in the person of Thomas Herzog, has been more responsible for the difficulties than were the members of the Canada Creek Ranch Association. We are also of the opinion that the trial court has worked out a reasonable solution of the problems. There is competent evidence to support the finding of facts made by the court. A court of equity has power to interfere in the internal affairs of a corporation when there is fraud or breach of trust. See *Dodge* v. *Ford Motor Co.,* 204 Mich 459 (3 ALR 413).

In *Turner* v. *Calumet & Hecla Mining Co.,* 187 Mich 238, we upheld a decree granting an injunction restraining the principal corporation from voting for directors in the subsidiary corporation.

In the case at bar Canada Creek Ranch Association was treated by Monteith Land Company as a subsidiary corporation.

In our opinion the trial court was within his powers in regulating the election of directors of the Canada Creek Ranch Association. We have examined the record and conclude that the trial court arrived at

the correct solution of the internal problems of the 2 corporations.

The decree is affirmed, with costs to plaintiffs.

DETHMERS, BUTZEL, CARR, BUSHNELL, BOYLES, and REID, JJ., concurred.

The late Chief Justice NORTH did not sit.